STEPHANIE O. SPARKS - BAR# 218438
sos@hogefenton.com
SHELLA DEEN - BAR# 149735
sd@hogefenton.com
JUSTINE M. CANNON - BAR# 254176
jmc@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Phone: (408) 287-9501
Fax:  (408) 287-2583

Attorneys for Plaintiff DPIX LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DPIX LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>  vs.<br><br>YIELDBOOST TECH, INC., a California corporation, and KYO YOUNG CHUNG, an individual,<br><br>    Defendants. | No.<br><br>**COMPLAINT FOR**<br><br>1. **DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF PATENT**<br>2. **DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY OF PATENT**<br>3. **MISAPPROPRIATION OF TRADE SECRETS**<br>4. **BREACH OF CONTRACT**<br>5. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>6. **BREACH OF DUTY OF LOYALTY**<br>7. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**<br>8. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>9. **UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff dpiX LLC ("dpiX") files this Complaint against Defendants Yieldboost Tech, Inc. ("Yieldboost") and its founder, Kyo Young Chung ("Chung") (Yieldboost and Chung are referred to collectively as "Defendants"), and alleges:

## NATURE OF THE ACTION

1. This is a declaratory judgment action for an order declaring that dpiX has not infringed, and does not infringe, directly or indirectly, United States Patent No. 7,154,292 entitled "*Method of Detective Defects in TFT-Arrays and a TFT-Array Testing System Incorporating the Same*" (the "'292 Patent"), and that the '292 Patent is invalid or unenforceable. (A true and correct copy of the '292 Patent is attached hereto as **Exhibit A**). In this action, dpiX also seeks damages and injunctive relief against its former employee and independent contractor, Chung, who is the named inventor on the '292 Patent, for claims of misappropriation of trade secrets; breach of contract; breach of the implied covenant of good faith and fair dealing; breach of the duty of loyalty, intentional interference with contractual relationships; intentional interference with prospective economic advantage; and unfair competition.

## PARTIES

2. dpiX is a Delaware limited liability company with its principal place of business at 1635 Aeroplaza Drive, Colorado Springs, Colorado 80916-3804. At times relevant to many of the allegations in this Complaint until July 5, 2014, maintained a facility in the Northern District of California at 3406 Hillview Avenue, Palo Alto, California 94304-1345.

3. On information and belief, Yieldboost is a California corporation doing business in the Northern District of California with its principal place of business at 2975 R Street, Merced, California 95348. On information and belief, at times relevant to many of the allegations in this Complaint, Yieldboost conducted business and maintained a business office in the Northern District of California at 6489 Camden Avenue, Suite 101, San Jose, California. On information and belief, Yieldboost claims to be the owner of the '292 Patent, by assignment from Chung.

4. On information and belief, Chung resides in Merced County at the same address as Yieldboost's current principal place of business, 2975 R Street, Merced, California 95348. On information and belief, at times relevant to many of the allegations in this Complaint, Chung resided

in the Northern District of California at 1265 Oak Knoll Drive, San Jose, California 95129, and at 6838 Westmoor Way, San Jose, California. In 2007 and 2008, Chung entered into contracts with dpiX, was an independent contractor and then an employee of dpiX, and performed work for dpiX, in the Northern District of California. On information and belief, Chung claims to have assigned his interest in the '292 Patent to his company, Yieldboost.

## JURISDICTION AND VENUE

5. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202. This action seeks, *inter alia*, a declaration of non-infringement and invalidity of the '292 Patent, and damages and injunctive relief for the claims asserted herein.

6. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338(a) and (b), and 2201, and 35 U.S.C. §§1 *et seq*., including § 271, because this action arises under the United States patent laws.

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

8. Pursuant to 28 U.S.C. § 1367 this Court has supplemental jurisdiction over pendent claims under the laws of the State of California, including, without limitation, misappropriation of trade secrets (Cal. Civ. Code §§ 3426, *et seq*.) and unfair competition (Cal. Bus. & Prof. Code §§ 17200, *et seq*.). The relationship between the federal and state claims in this action is such that they form part of the same case or controversy

9. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391 *et seq*. and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

10. This is an Intellectual Property Action to be assigned on a district-wide basis, pursuant to Civil Local Rule 3-2(c).

///

## BACKGROUND

11. On May 5, 1999, dpiX was formed in the State of Delaware. dpiX provides high-resolution imaging solutions for medical, industrial and military markets. dpiX develops unique amorphous silicon (a-Si) x-ray image sensor array technology and manufactures sensor arrays that combine a unique thin film transistor ("TFT") and advanced n-i-p photo detector technology. dpiX's sensor arrays are sold to customers for use in image detector subsystems which are integrated into x-ray imaging systems such as radiography, fluoroscopy, cardiology and portal imaging.

12. In the course of its business, dpiX develops technology and enters into confidential and proprietary contractual relationships with suppliers and customers. dpiX takes strict precautions and protocols to protect all such confidential and proprietary information from the general public, including without limitation, maintaining all dpiX documents, including designs, plans, contracts and related communications, on internal servers, marking documents as "confidential" and/or "internal use," and requiring employees to enter into, and adhere to, confidentiality agreements.

13. Chung is an electrical engineer with both a Masters of Science and a PhD in Electrical Engineering and works in the TFT field.

14. On information and belief, on September 25, 2000, Chung incorporated Yieldboost and was its Chief Technical Officer from 2000 to 2007. On information and belief, Chung formed Yieldboost for the development and marketing of a software solution and consulting work for yield improvement of TFT-LCD manufacturing companies.

15. On December 26, 2006, the '292 Patent, titled "Method of Detecting Defects in TFT-Arrays and a TFT-Array Testing System Incorporating the Same," was issued to Chung. Chung purportedly assigned the '292 Patent to Yieldboost.

16. Approximately five months later, Chung sent his resume to, and sought employment from dpiX.

## CHUNG'S EMPLOYMENT RELATIONSHIP WITH DPIX

17. On June 5, 2007, Chung submitted an application for employment for a Test Manager position with dpiX. In executing the application, Chung agreed to a confidentiality clause,

COMPLAINT FOR DECLARATORY JUDGMENT (PATENT); DAMAGES AND INJUNCTIVE RELIEF
\\HFJADOCS\NDrive\86177\Ple\1467728_7.doc

which included the following language:

> "Persons employed at dpiX have access to confidential information regarding various phases of Company business. Therefore, the Company follows the usual practice of requiring new employee, at the time of employment, to sign a proprietary information and conflict interest agreement."

18. On his application for employment at dpiX, Chung certified, *inter alia*, that he ended his employment at Yieldboost in June 2007 due to a "close down of the company."

19. On June 26, 2007, dpiX and Chung entered into a Technical Consulting Agreement (the "June 26, 2007 Consulting Agreement"), whereby Chung would act as a consultant to dpiX and provide specialized services in T42 yield testing and site assessment. Key confidentiality and conflict of interest provisions of the June 26, 2007 Consulting Agreement are as follows:

    a. Paragraph 5(a): "Consultant [Chung] hereby assigns to Company [dpiX] its entire right, title, and interest in the knowledge, information, data, research and development, notes, designs, inventions, improvements, discoveries, apparatus, materials, patents, copyrights, trade secrets, and other proprietary rights, in whatever form, produced or created by (whether solely or in collaboration with others) or for Consultant as a result of, or related to, performance of work or services under this Agreement (including any of the foregoing that constitute Confidential Information as hereinafter defined) (referred to herein as "Work Product"). Consultant agrees that Work Product is the sole property of Company. . . ."

    b. Paragraph 5(b): Company agrees that Consultant shall retain any and all rights Consultant may have in the knowledge, information, data, apparatus, materials, patents, copyrights, trade secrets, and other proprietary rights (referred to herein as "Background Information") created or otherwise acquired by Consultant prior to the date of this Agreement and owned by Consultant. Consultant hereby grants Company an unrestricted, nonexclusive, perpetual license to use and sublicense the use of such Background Information. Consultant agrees that if, in the course of performing the Services, Consultant incorporates into any Work Product developed under this Agreement any invention, improvement, development, concept, discovery or other

proprietary information owned by Consultant or in which Consultant has an interest, (i) Consultant will inform the Officer of Company, in writing before incorporating such invention, improvement, development, concept, discovery or other proprietary information into any Work Product, and (ii) Company is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, worldwide license to make, have made, modify, use and sell such item as part of or in connection with such Work Product.  Consultant will not incorporate any invention, improvement, development, concept, discovery or other proprietary information owned by any third party into any Invention without the prior written permission of the Officer.

c. Paragraph 6(a): "'Confidential Information' means any and all data and information concerning the business affairs of Company and not generally known in the industry in which Company is or may become engaged, and any other information concerning any matters affecting or relating to the business of Company, but in any event Confidential Information shall include, all of Company's past, present or prospective business opportunities . . . clients, client lists, client protocols, client studies, . . . or any other information concerning the business of Company, its manner of operation, its plans, processes, . . . supply sources, contracts, know-how, trade secrets, information relating to research, development, inventions, technology, techniques, manufacture, purchasing, engineering . . . or other data without regard to whether all of the foregoing matters will be deemed confidential, material or important."

d. Paragraph 6(b): "Consultant acknowledges that any Confidential Information disclosed or made available to Consultant or obtained, observed or known by Consultant as a direct or indirect consequence of the performance of services for Company is the property of Company.  Consultant specifically agrees that Consultant will not at any time, whether during or subsequent to the term of this Agreement, in any fashion, form, or manner, unless specifically consented to in writing by the Officer or as required by law, either directly or indirectly use, divulge, disclose or communicate to any person, firm, or corporation (including Company clients,

members, employees, and other Consultant), in any manner whatsoever, any Confidential Information. The parties to this Agreement stipulate that, as between them, the same are important, material, and confidential trade secrets and affect the successful conduct of Company business and its goodwill, and that any breach of any term of this paragraph is a material breach of the Agreement."

    e. Paragraph 7d (2): Any termination of this Agreement . . . (2) shall not relieve Consultant of Consultant's obligations under paragraphs 5, 6 and 7.

20. Prior to completion of the term of Chung's June 26, 2007 Consulting Agreement, dpiX offered Chung employment as a New Product Technologist. dpiX's September 11, 2007 offer letter was issued by dpiX's headquarters in Palo Alto, California, and mailed to Chung at his residence in San Jose, California. The employment offer, which was accepted by Chung on September 12, 2007, also contained a confidentiality clause that was, in all relevant respects, the same as the confidentiality clause contained in Chung's June 2007 employment application.

21. On September 12, 2007, Chung and dpiX entered into a Proprietary Information and Conflict of Interest Agreement, in which Chung agreed to the following provisions:

    a. Paragraph (B): "During and after my employment with dpiX, I will promptly notify dpiX of all inventions, discoveries, computer programs and systems, works of authorship, improvements and developments, whether patentable, copyrightable or otherwise, which I may conceive, create, author or otherwise produce during my employment with dpiX, and I hereby assign the entirety of my right, title and interest to dpiX in all such inventions, discoveries, computer programs and systems, works of authorship, improvements and developments . . ."

    b. Paragraph (C): "During and after my employment with dpiX, I will neither disclose nor assist in the unauthorized disclosure of any dpiX confidential or proprietary information (which includes, but is not limited to, trade secrets, formulas, customer data, strategies, methods, processes, machines, inventions, discoveries, computer programs and systems, works of authorship, improvements, and other developments whether in writing or tangible form), nor will I use such information for any purpose

-7-
COMPLAINT FOR DECLARATORY JUDGMENT (PATENT); DAMAGES AND INJUNCTIVE RELIEF
\\HFJADOCS\NDrive\86177\Ple\1467728_7.doc

except as required by dpiX. All materials furnished to me by dpiX, including without limitation documents, drawings, apparatus, sketches, designs, physical material, confidential or proprietary information and media upon which such information is stored and recorded shall remain the property of dpiX at all times. . . ."

    c. Paragraph (E): "I am not a party to any agreements which in any way conflict with the foregoing provisions, nor do I own or have an interest in a patent application or unpatented invention."

    d. Paragraph (F): "I am not now a promoter, director, employee, officer or consultant of a for-profit organization, and I understand that the prior written consent of dpiX is required before I may accept any future positions of this nature."

22. On the agreement Chung wrote that he would like to exclude from Paragraphs (E) and (F) his position of "Officer of Yieldboost Tech, Inc." Chung failed to disclose any interest in a patent application or unpatented invention, as called for by Paragraph (E).

23. During the term of the June 26, 2007 Consulting Agreement and during the course of his employment with dpiX, Chung had access to dpiX's confidential, proprietary and trade secret information. As a technical consultant to, and New Product Technologist for dpiX, Chung had access to dpiX's technology, test and repair tools and tester files. He also had access to information regarding dpiX's test methods and details on how dpiX's products worked and performed. Chung also had access to information about dpiX's supplier and customer technologies and products. On information and belief, Chung communicated with dpiX's suppliers and, on information and belief, he was also present for confidential customer meetings.

24. Chung's employment with dpiX was terminated on March 28, 2008. On that date, Chung entered into the Separation Agreement and General Waiver and Release ("March 28, 2008 Separation Agreement"), in which Chung agreed to the following provision:

    a. Paragraph 10: "Confidential Information. Employee acknowledges and agrees that in the course of his employment with the Company, he has had access to and/or made use of certain confidential information relating to the business activities of the Company. Such confidential information includes, but is not limited to, technical

information; personnel information; business strategies; financial results; pricing data; sourcing information; design information; market surveys and research data; and contractual agreements between the Company and vendors and other persons or entities, compilations of information and records that are owned by the Company and are regularly used in the operation of the Company's business and other information that is kept confidential by the Company.  Employee agrees that he will not disclose any such confidential information, directly or indirectly, or use any of it in any way whatsoever.  Employee further represents and agrees that all files, computer programs, records, documents, lists, specifications, and similar items relating to the business activities of the Company, including any and all copies, whether prepared by Employee or otherwise coming into the Employee's possession, custody or control, are property of the Company and have been or will be returned immediately by him to the Company and that he will not remove from the premises of the Company any such property or information or any electronic or other equipment of any kind.  Employee understands and agrees that the [Employment, Confidential Information and Invention Assignment] Agreement signed by Employee remains in full force and effect and it incorporated herein by reference."

25. Upon information and belief, immediately thereafter, Chung returned to Yieldboost as its CEO/President.

## **THE SUBSTANTIAL CONTROVERSY BETWEEN THE PARTIES**

26. On or about November 19, 2013, Yieldboost sent a demand letter to dpiX claiming patent infringement and demanding that dpiX license Yieldboost's '292 Patent.  A true and correct copy of the letter, redacted to protect dpiX's confidential information and without enclosures, is attached hereto as **Exhibit B**.

27.  Yieldboost's letter also described a unique and highly confidential collaborative relationship and course of dealing between dpiX and one of its customers ("Customer").  This special relationship between the Customer and dpiX is highly confidential and proprietary, is not public knowledge, and could only have been learned about by Chung as a result of his previous

consultancy work or employment with dpiX or misconduct by Chung.

28. Contrary to Yieldboost's allegations, dpiX has not infringed and does not infringe, directly or indirectly, any claims of the '292 Patent, and under the facts and circumstances, among other things, the '292 Patent is unenforceable.

29. Moreover, since at least January 2002, well before Chung filed the application for the '292 Patent, dpiX has been practicing the same method of detecting defects in sensor arrays, the practice that Defendants claim infringe the '292 Patent.

30. dpiX has reasonable fear and apprehension that patent infringement litigation will be brought against it. Therefore, there currently exists an actual and justiciable controversy between dpiX and Yieldboost relating to the validity of the '292 Patent and regarding the alleged infringement of the '292 Patent by dpiX or by use of dpiX's test equipment under Article III of the United States Constitution and serves a useful purpose in clarifying and settling the legal rights at issue.

**FIRST CAUSE OF ACTION**
**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '292 PATENT)**
**(AGAINST ALL DEFENDANTS)**

31. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 30 above as if fully set forth herein.

32. Yieldboost contends that dpiX infringes the '292 Patent.

33. dpiX denies Yieldboost's contention. dpiX has not infringed, has not willfully infringed, is not now infringing, has not contributorily infringed, and has not induced infringement of any valid claim of the '292 Patent. dpiX does not make, use, offer for sale, sell, import or export, and has not ever made, used, offered to sell, sold, imported or exported any product that directly or indirectly infringes any claim of the '292 Patent.

34. dpiX further denies Yieldboost's claim of infringement where dpiX has been practicing, since at least January 2002, the same method of detecting defects in sensor arrays accused of by Yieldboost as infringing the '292 Patent.

35. Accordingly, dpiX seeks and is entitled to a declaratory judgment by the Court against Yieldboost, that dpiX, its testers and its products have not and do not directly or indirectly

infringe any claim of the '292 Patent.

## SECOND CAUSE OF ACTION
### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '292 PATENT)
### (AGAINST ALL DEFENDANTS)

36. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 35 above as if fully set forth herein.

37. Yieldboost contends that the '292 Patent is valid.

38. dpiX denies Yieldboost's contention and alleges that the '292 Patent is invalid for failure to meet at least one or more of the requisite statutory and decisional requirements and/or conditions for patentability set forth, *inter alia*, in Title 35 of the United States Code.

39. As set forth above, an actual and justiciable controversy exists between dpiX and Yieldboost concerning the validity of the '292 Patent.

40. Accordingly, dpiX seeks and is entitled to a declaratory judgment against Yieldboost, under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, that the claims of the '292 Patent are invalid.

## THIRD CAUSE OF ACTION
### (MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE §§ 3426, *ET SEQ*.))
### (AGAINST CHUNG)

41. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

42. At all relevant times, dpiX was in possession of trade secret information as defined by California's Uniform Trade Secrets Act ("CUTSA"), Civil Code section 3426.1(d). As described above, Chung had access to said trade secrets during the term of his consultancy and subsequent employment with dpiX.

43. The confidential and proprietary business and customer information of dpiX that Chung had access to constitutes trade secrets because dpiX derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy. dpiX's trade secret

information described herein is not and was not generally known to dpiX's competitors.

44. dpiX is informed and believes and thereon alleges that Chung has misappropriated and continues to misappropriate dpiX's trade secrets in violation of CUTSA.

45. As a result of his consultancy and employment with dpiX, Chung had access to dpiX's valuable trade secrets. Chung continues to have knowledge of that information, notwithstanding that he is again working with Yieldboost, a company that he founded and that has competing technology.

46. On information and belief, Chung has improperly used and/or disclosed, is improperly using and/or disclosing, and intends to improperly use or disclose, dpiX's trade secrets to others in violation of CUTSA and the agreements he entered into with dpiX related to his consultancy and employment with dpiX, including: the June 5, 2007 employment application; the June 26, 2007 Consulting Agreement; the September 11, 2007 offer letter; the September 12, 2007 Proprietary Information and Conflict of Interest Agreement; and the March 28, 2008 Separation Agreement (referred to collectively as the "Employment Agreements").

47. Chung has and will continue to improperly use dpiX's trade secrets unless enjoined.

48. Chung, by his fraudulent and deceitful conduct to date, has demonstrated that he cannot be counted on to avoid disclosing and utilizing dpiX's trade secrets.

49. As a proximate result of Chung's misappropriation of dpiX's trade secrets, including but not limited to, proprietary technology and confidential customer information, Chung has been unjustly enriched. dpiX has suffered, and will continue to suffer, irreparable harm, as well as money damages in an amount to be proven at trial.

50. Because dpiX's remedy at law is inadequate, dpiX seeks immediate and permanent injunctive relief. dpiX is threatened with loss of business and business of its customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may be impossible to determine, unless Chung is enjoined and restrained by order of this Court.

51. Chung's actual and threatened misappropriation has been willful and malicious in light of Chung's repeated execution of contracts prohibiting his current conduct and his deliberate violation of his contractual obligations. Therefore, in addition to damages and other available

remedies, dpiX is also entitled to an exemplary award that is twice the amount of any award of damages, unjust enrichment and/or royalty made under the CUTSA, as well as its attorneys' fees pursuant to Civil Code sections 3426.3(c) and 3426.4.

### FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT)
### (AGAINST CHUNG)

52. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 51 above as if fully set forth herein.

53. Chung's Employment Agreements are valid and enforceable contracts. The confidentiality and conflict of interest covenants, and other provisions contained in the Employment Agreements as described above, are reasonably necessary to protect dpiX's legitimate interest in its trade secrets, confidential and proprietary information, customer relationships and goodwill.

54. dpiX has fully performed all terms, conditions, covenants, and promises required of it pursuant to the terms of each of the Employment Agreements, except those that have been discharged, excused, waived or prevented.

55. Chung has breached and continues to breach the terms of the Employment Agreements by, among other things:

  a. Improperly utilizing confidential and proprietary information obtained by way of his consultancy and/or employment with dpiX, including but not limited to technologies, processes, customer and supplier information, in breach of his obligations under at least the following paragraphs: 5(a), 5(b) and 6(b) of the June 26, 2007 Consulting Agreement, and (B) and (C) of the September 12, 2007 Proprietary Information and Conflict of Interest Agreement; and/or

  b. Utilizing dpiX's confidential, proprietary and/or trade secret information for his own personal benefit and for the benefit of Yieldboost, his own company with competing technology, in violation of confidentiality and conflict of interest provisions in each of the Employment Agreements.

56. As a direct and proximate result of Chung's breaches, dpiX has been damaged in an amount to be shown according to proof at trial, including but not limited to, lost profits, lost

royalties, and professional fees and costs, as well as other incidental and consequential damages.

57. As a result of Chung's breaches of the Employment Agreements, dpiX has been and continues to suffer irreparable injury including, without limitation, the threatened loss of customers, technology, competitive advantage, trade secrets and goodwill, for which damages may be impossible to determine and for which there is no adequate remedy at law, unless Chung is enjoined and restrained by order of this Court.

**FIFTH CAUSE OF ACTION**
**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**
**(AGAINST CHUNG)**

58. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 57 above as if fully set forth herein.

59. Implied in every contract is a covenant of good faith and fair dealing that neither party will engage in any act or omission that is intended or has the natural tendency to deprive the other party of the full benefit of its bargain. This covenant is implied into to the Employment Agreements between dpiX and Chung, and imposes upon Chung a duty not to engage in acts or omissions that would frustrate the enjoyment of dpiX of any of the rights and benefits owed or reasonably expected under the Employment Agreements.

60. Among other things, the Employment Agreements contained confidentiality and conflict of interest provisions, which would protect dpiX's confidential and proprietary information.

61. dpiX has fully performed all terms, conditions, covenants, and promises required of it pursuant to the terms of the Employment Agreements, except those that have been discharged, excused, waived or prevented.

62. Chung unfairly frustrated the agreed upon common purposes of the Employment Agreements and has disappointed the reasonable expectations of dpiX and deprived dpiX of the benefits reasonably expected under the Employment Agreements.

63. As a proximate result of Chung's breaches of the covenant of good faith and fair dealing, dpiX has been damaged in an amount to be shown according to proof at trial, including but not limited to, lost profits, lost royalties, and professional fees and costs, as well as other incidental and consequential damages.

-14-
COMPLAINT FOR DECLARATORY JUDGMENT (PATENT); DAMAGES AND INJUNCTIVE RELIEF
\\HFJADOCS\NDrive\86177\Ple\1467728_7.doc

## SIXTH CAUSE OF ACTION
### (BREACH OF THE DUTY OF LOYALTY)
### (AGAINST CHUNG)

64. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 63 above as if fully set forth herein.

65. Pursuant to California Labor Code sections 2854 and 2859, as an employee of dpiX, Chung owed a duty of care, diligence, skill and loyalty to dpiX.

66. Chung breached his duty to dpiX as a result of the acts alleged herein, including but not limited to: (1) on information and belief, failing to disclose his ongoing relationship with Yieldboost, the company he founded, during the term of his employment with dpiX; (2) failing to disclose his interest in patents and unpatented inventions, including but not limited to the '292 Patent; (3) misappropriating and improperly using information about dpiX's business, including but not limited to confidential and proprietary technology, product, commercial contract, and customer information; (4) misappropriating confidential and propriety technology that was received by dpiX from its Customer, and which could only have been obtained by Chung during the course of his consultancy work or employment with dpiX or misconduct by Chung.

67. As a direct and proximate result of Chung's breach of his duty to dpiX, Chung has been unjustly enriched, and dpiX has been damaged in an amount to be proven at trial.

68. As result of Chung's breach of duty, dpiX also faces irreparable injury for which there is no adequate remedy at law. dpiX is threatened with loss of business and business of its customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may be impossible to determine, unless Chung is enjoined and restrained by order of this Court.

69. Chung's acts alleged above were willful, wanton, malicious, oppressive, and undertaken with the intent to defraud dpiX, and justify the award of exemplary or punitive damages.

## SEVENTH CAUSE OF ACTION
### (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP)
### (AGAINST CHUNG)

70. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 69 above as if fully set forth herein.

71. During the course of his employment with dpiX, Chung had access to dpiX's

1  confidential and proprietary customer information and knew of the existence of certain client and
2  supplier agreements, including but not limited to dpiX's relationship with certain confidential
3  clients, including Customer.

4      72. By disclosing dpiX's confidential client and commercial relationship information to
5  Yieldboost, Chung knew that this would negatively affect dpiX's lucrative confidential client and
6  business relationships, particularly in light of aforementioned agreements.

7      73. Chung engaged in the conduct alleged herein with the intent to harm dpiX financially
8  and to make the contractual relationships between dpiX and its suppliers and clients less financially
9  lucrative for dpiX.

10     74. As a direct and proximate result of Chung's conduct, Chung has been unjustly
11 enriched, and dpiX was damaged in an amount to be proven at the time of trial.

12     75. As result of Chung's conduct, dpiX also faces irreparable injury for which there is no
13 adequate remedy at law. dpiX is threatened with loss of business and business of its customers,
14 technology, its competitive advantage, its trade secrets and goodwill in amounts which may be
15 impossible to determine, unless Chung is enjoined and restrained by order of this Court.

16     76. Chung's acts alleged above were willful, wanton, malicious, oppressive, and
17 undertaken with intent to defraud dpiX, and justify the award of exemplary or punitive damages.

18 **EIGHTH CAUSE OF ACTION**
**(INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**
19 **(AGAINST CHUNG)**

20     77. dpiX alleges and incorporates by this reference each and every allegation set forth in
21 paragraphs 1 through 76 above as if fully set forth herein.

22     78. At all relevant times, Chung was fully aware that dpiX had substantial and lucrative
23 business relationships with clients and other entities, including but not limited to Customer.

24     79. Chung engaged in the conduct alleged above with the intent to interfere with and/or
25 destroy the economically-advantageous relationships between dpiX and such clients and other
26 entities, and to make those relationships less financially lucrative for dpiX.

27     80. As a proximate result of Chung's conduct, dpiX has been damaged in an amount to
28 be determined according to proof at trial.

-16-
COMPLAINT FOR DECLARATORY JUDGMENT (PATENT); DAMAGES AND INJUNCTIVE RELIEF
\\HFJADOCS\NDrive\86177\Ple\1467728_7.doc

81. As result of Chung's conduct, dpiX also faces irreparable injury for which there is no adequate remedy at law. dpiX is threatened with loss of business and business of its customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may be impossible to determine, unless Chung is enjoined and restrained by order of this Court.

82. Chung's acts alleged above were willful, wanton, malicious, oppressive, and undertaken with intent to defraud dpiX, and justify the award of exemplary or punitive damages.

**NINTH CAUSE OF ACTION**
**(UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §§ 17200, ET. SEQ.])**
**(AGAINST ALL DEFENDANTS)**

83. dpiX realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 82 above as if fully set forth herein.

84. Chung knowingly misappropriated dpiX's proprietary information for use himself and in his business, Yieldboost, and has engaged in unfair competition with dpiX. Yieldboost has evaluated and used the misappropriated information from Chung in the conduct of its business.

85. Defendants have and continue to engage in a deliberate campaign to severely damage dpiX by, among other things, improperly using dpiX's proprietary and confidential technology, business and customer information in violation of the law and in breach of Chung's Employment Agreements.

86. Defendants' actions as described above, including threatening dpiX with baseless allegations of patent infringement while knowing that the '292 Patent does not encompass the subject matter that Yieldboost purports, constitutes unfair competition prohibited by the California Unfair Competition Law ("UCL"), codified under California Business & Professions Code sections 17200, *et seq.*

87. As a direct and proximate result of Defendants' unfair competition, dpiX has suffered and continued to suffer direct and irreparable injury.

88. As a direct and proximate result of Defendants' wrongful conduct, Defendants have been unjustly enriched, in an amount to be proven at trial.

89. Defendants must be immediately and permanently enjoined from further violations of

COMPLAINT FOR DECLARATORY JUDGMENT (PATENT); DAMAGES AND INJUNCTIVE RELIEF
\\HFJADOCS\NDrive\86177\Ple\1467728_7.doc

the UCL.

**PRAYER FOR RELIEF**

WHEREFORE, dpiX prays for judgment:

<u>AS TO THE FIRST CAUSE OF ACTION (DECLARATORY RELIEF FOR NONINFRINGEMENT) AND SECOND CAUSE OF ACTION (DECLARATORY RELIEF FOR INVALIDITY):</u>

A. Declaring that dpiX has not and does not infringe, directly or indirectly, or in any manner any claim of the '292 Patent;

B. Declaring that the claims of the '292 Patent are invalid or unenforceable; and

C. Declaring that dpiX is the prevailing party, that this is an exceptional case, and that dpiX be awarded its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S. C. § 285, and all other applicable statutes, rules and common law.

<u>AS TO THE THIRD CAUSE OF ACTION (MISAPPROPRIATION OF TRADE SECRETS):</u>

A. Awarding dpiX damages according to proof;

B. Permanently enjoining Chung and his principals and agents, including without limitation Yieldboost, from continued use of confidential and proprietary information misappropriated from dpiX;

C. Awarding dpiX exemplary damages and attorneys' fees and costs pursuant to California Civil Code sections 3426.3(c) and 3426.4;

D. Awarding dpiX restitution and/or to disgorge from Chung and his principals and agents, including without limitation Yieldboost, money wrongfully obtained in amounts according to proof.

<u>AS TO THE FOURTH CAUSE OF ACTION (BREACH OF CONTRACT):</u>

A. Awarding dpiX compensatory damages according to proof; and

B. Awarding dpiX its costs and attorneys' fees plus interest.

/ / /

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT (PATENT); DAMAGES AND INJUNCTIVE RELIEF
\\HFJADOCS\NDrive\86177\Ple\1467728_7.doc

AS TO THE FIFTH CAUSE OF ACTION (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING):

    A.    Awarding dpiX compensatory damages according to proof; and

    B.    Awarding dpiX its costs and attorneys' fees plus interest.

AS TO THE SIXTH CAUSE OF ACTION (DUTY OF LOYALTY), SEVENTH CAUSE OF ACTION (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS), AND EIGHTH CAUSE OF ACTION (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE):

    A.    Awarding dpiX general and special damages according to proof at trial;

    B.    Permanently enjoining Chung and his principals and agents, including without limitation Yieldboost, against continued use of confidential and proprietary information misappropriated from dpiX;

    C.    Awarding dpiX restitution and/or to disgorge from Chung and his principals and agents, including without limitation Yieldboost, money wrongfully obtained by means of Chung's intentional wrongful conduct; and

    D.    Awarding exemplary or punitive damages.

AS TO THE NINTH CAUSE OF ACTION (UNFAIR COMPETITION):

    A.    Permanently enjoining Defendants, and each of them, and their respective successors, heirs, assigns, principals, agents, employees, representatives, and all entities or persons acting in concert with them, from continued use of confidential and proprietary information misappropriated from dpiX;

    B.    Imposing civil penalties against Defendants, and each of them, for unfair competition, including violation of California Business & Professions Code §§ 17200 *et seq*, §17206;

    C.    Awarding dpiX restitution and/or to disgorge from Defendants, and each of them, of money wrongfully obtained by means of unfair competition.

AS TO EACH CAUSE OF ACTION:

    A.    For costs of suit incurred; and

B.   For such other and further legal and equitable relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, dpiX demands a jury trial.

Dated:  December 9, 2014                    HOGE, FENTON, JONES & APPEL, INC.


_____
Stephanie O. Sparks (218438)
Shella Deen (149735)
Justine M. Cannon (254176)
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Phone: (408) 287-9501
Fax:  (408) 287-2583
sos@hogefenton.com
sd@hogefenton.com
jmc@hogefenton.com

Attorneys for Plaintiff DPIX, LLC

COMPLAINT FOR DECLARATORY JUDGMENT (PATENT); DAMAGES AND INJUNCTIVE RELIEF
\\HFJADOCS\NDrive\86177\Ple\1467728_7.doc